UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| CYNTHIA L. GREENE, | ) | Case No. C07-279-RAJ-JPD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner, | ) | REPORT AND RECOMMENDATION |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Cynthia Greene appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be AFFIRMED, and this matter be DISMISSED with prejudice.

I. FACTS AND PROCEDURAL HISTORY

Plaintiff is a forty-eight year old woman with a formal ninth-grade education, who has, however, received her GED. Administrative Record ("AR") at 68, 409. Her past work experience includes employment as a waitress, cashier and a car-rental agent. AR at 75, 397-98. Plaintiff was last gainfully employed in September 2000. *Id*.

REPORT AND RECOMMENDATION
PAGE – 1

01       Plaintiff filed an application for SSI on December 8, 2004, and an application for DIB
02  on December 13, 2004.  AR at 383, 225.  She alleges that she is disabled due to back, foot,
03  knee, ankle and wrist impairments, together with severe mental impairments, including
04  depression.  She asserts an onset date of September 10, 2000.  AR at 383, 225.

05       The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 20.
06  Plaintiff requested a hearing, which took place on August 22, 2006.  AR at 394.  On
07  September 29, 2006, the ALJ issued a decision finding plaintiff not disabled and denied
08  benefits based on his finding that plaintiff could perform a specific job existing in significant
09  numbers in the national economy.  AR at 20-31.

10       Plaintiff requested administrative review of the ALJ's decision.  After evaluating
11  additional evidence, the Appeals Council denied plaintiff's request for review, AR at 8-10,
12  making the ALJ's September 29, 2006 ruling the "final decision" of the Commissioner as that
13  term is defined by 42 U.S.C. § 405(g).  On February 22, 2007, plaintiff timely filed the present
14  action challenging the Commissioner's decision.  Dkt. No. 1.

## II. JURISDICTION

16       Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§
17  405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

19       Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of
20  social security benefits when the ALJ's findings are based on legal error or not supported by
21  substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th
22  Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is
23  such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.
24  *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750
25  (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in
26  medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*,

PAGE – 2

01  53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a
02  whole, it may neither reweigh the evidence nor substitute its judgment for that of the
03  Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence
04  is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that
05  must be upheld. *Id.*

06  The Court may direct an award of benefits where "the record has been fully developed
07  and further administrative proceedings would serve no useful purpose." *McCartey v.*
08  *Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen*, 80 F.3d at 1292). The Court
09  may find that this occurs when:

> (1) the ALJS has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJS would be required to find the claimant disabled if he considered the claimant's evidence.

13  *Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that
14  erroneously rejected evidence may be credited when all three elements are met).

## IV.  EVALUATING DISABILITY

16  As the claimant, Ms. Greene bears the burden of proving that she is disabled within the
17  meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th
18  Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in
19  any substantial gainful activity" due to a physical or mental impairment which has lasted, or is
20  expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§
21  423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments
22  are of such severity that she is unable to do her previous work, and cannot, considering her
23  age, education, and work experience, engage in any other substantial gainful activity existing
24  in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v.*
25  *Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

26  The Commissioner has established a five step sequential evaluation process for

determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION
PAGE – 4

claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.  DECISION BELOW

On September 29, 2006, the ALJ issued a decision finding:

1. The claimant met the insured status requirements of the Social Security Act through September 30, 2006.

2. The claimant has not engaged in substantial gainful activity since September 10, 2000, the alleged onset date of disability. (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: status post ankle (left) surgery, status post wrist (right) surgery, degenerative disc disease, and depression.  (20 CFR 404.1520.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work.  The claimant is able to lift and carry ten pounds frequently.  With normal breaks, the claimant can stand or walk for a total of two hours in an eight-hour work day, and sit for about six hours in an eight-hour work day.  The claimant can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs; but never climb ladders, ropes, or scaffolds.  The claimant should avoid concentrated exposure to extreme cold, vibration, and environmental hazards, such as machinery and heights.  The claimant is capable of simple tasks, should avoid interaction with the general public, would work best with few co-workers, and can meet the basic adaptive needs of the work place.

6. The claimant is unable to perform any past relevant work. (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 18, 1959, and was forty-one years old on the alleged disability onset date, which is defined as a younger individual.  (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English. (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because the Medical-Vocational Rules support a finding that the claimant is not disabled, whether or not the claimant has transferable job skills. (20 CFR Part 404, Subpart P, Appendix 2 and SSR 82-41).

    10.    Considering the claimant's age, education, work experience, and the residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

    11.    The claimant has not been under a disability, as defined in the Social Security Act, from September 10, 2000, through the date of this decision. (20 CFR 404.1520(g) and 416.920(g)).

AR at 22-30.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ Properly Include All of Plaintiff's Severe Impairments During the Sequential Evaluation Process?

2. Did the ALJ Err in Assessing the Plaintiff's Credibility?

3. Did the ALJ Err by Using the Medical-Vocational Guidelines Rather than Calling a Vocational Expert?

Dkt. No. 15 at 9, 16.

## VII. DISCUSSION

A. <u>The ALJ Properly Considered All of Plaintiff's Impairments and Properly Determined Her RFC</u>

The plaintiff asserts that the ALJ erred by failing to include left foot drop, left knee osteoarthritis, mental impairments of a mathematics disorder, or likely impulse control disorder with features of ADHD and Intermittent Explosive Disorder or pain disorder. Dkt. No. 15 at 9-15. The Commissioner argues that with the exception of mathematics disorder, the ALJ did not err in his assessment of the alleged mental impairments. Dkt. No. 17 at 5-6. The Commissioner also concedes that the ALJ should have included diagnoses of left foot drop, left knee osteoarthritis, and mathematics disorder in his determination of severe impairments at step two, but argues that the ALJ accounted for any functional limitations in his RFC finding at step four.

    1.    *Standards for Step Two Evaluation*

At step two of the sequential evaluation process, the ALJ is to identify all of the

REPORT AND RECOMMENDATION
PAGE – 6

plaintiff's severe impairments. Step two is a "de minimis screening device to dispose of groundless claims." *Smolen v. Charter*, 80 F.3d 1273, 1290 (9th Cir. 1996). At step four, however, the ALJ is tasked with considering all of the claimant's impairments, both severe and non-severe, and determining the claimant's ability to perform work. Accordingly, even though the ALJ may have erred by failing to identify certain impairments as severe at step two, the error would be harmless if the RFC determined at step four takes into account the limitations posed by the non-identified severe impairments. *See, e.g.*, *Masch v. Barnhart*, 406 F. Supp. 2d 1038, 1054 (E.D. Wisc. 2005) ("SSR 98-6 recognizes that in assessing RFC the ALJ must consider all mental and physical impairments, severe or not. Thus, if the ALJ fulfills this obligation at step four, any error at step two will likely be harmless."); *cf. Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1054-55 (9th Cir. 2006) (harmless error analysis appropriate where mistake is nonprejudicial to claimant or irrelevant to nondisability conclusion).

Accordingly, the two sub-issues presented are whether the ALJ erred in failing to include plaintiff's alleged mental impairments as severe at step two, and whether the ALJ's RFC analysis at step four takes into account the limitations posed by plaintiff's impairments of left foot drop, left knee osteoarthritis, mathematics disorder and other non-severe limitations.

### 2. *Plaintiff's Alleged Mental Impairments*

Plaintiff asserts that the ALJ disregarded the provisional or working impressions of plaintiff's coping capacity, impulse control disorder with features of ADHD and intermittent explosive disorder. Dkt. No. 15 at 14-15. Initially, citing *Gutierrez v. Apfel*, 199 F.3d 1048, 1051 (9th Cir. 2000), plaintiff claimed that the ALJ erred because he did not apply the "special technique" for determining the severity of her mental impairments consistent with the requirements of 20 C.F.R. § 404.1520(a). However, since *Gutierrez*, this Regulation has been amended, and completion of a special Psychological Rating Technique Form ("PRTF") is no longer required, so long as the ALJ documents his consideration of the issues set forth in the Regulation in the body of his opinion.

01	The Regulation requires that the ALJ rate the degree of limitation in four essential
02 areas of functioning: activities of daily living; social functioning; concentration, persistence, or
03 pace; and episodes of decompensation. *Id.* In each of the first three categories, the ALJ is to
04 use a five-point rating scale, ranging from "None" to "Extreme" to identify the degree of
05 limitation. For the category "Episodes of Decompensation," the ALJ uses a four-point scale
06 of none, one or two, three, four or more. *Id.*

07	The ALJ found that the plaintiff experienced only mild restrictions in her daily activities
08 of living, moderate difficulty maintaining social functioning, moderate difficulty maintaining
09 concentration persistence or pace and no episodes of decompensation. AR at 23-24. The
10 ALJ's opinion made the findings required by the Regulations.

11	In her reply brief, the plaintiff shifts her argument, and claims that the ALJ's findings
12 are not supported by substantial evidence and that the ALJ did not properly evaluate the
13 opinions of Kerry Bartlett, Ph.D and Kristine Harrison, Psy.D.

14	Dr. Bartlett evaluated the plaintiff in December 2001. AR at 165-72. Her report
15 acknowledged that much of the information given to her was based upon a review of limited
16 medical records and a clinical interview with the plaintiff. AR at 165. She also performed a
17 battery of psychological tests. Dr. Bartlett concluded she was unable to specify diagnoses
18 with much certainty due to self-reporting issues and lack of corroboration. The ALJ made an
19 adverse credibility determination regarding the plaintiff's claims, and gave little weight to Dr.
20 Bartlett's evaluation, concluding that Dr. Bartlett cast substantial doubt on her own findings.
21 In addition, the ALJ rejected the evaluation because it was heavily reliant on the plaintiff's
22 noncredible self-reporting. AR at 26. This is an appropriate basis upon which to reject Dr.
23 Bartlett's medical opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

24	Plaintiff also claims that the ALJ failed to take into account limitations expressed by
25 Dr. Harrison, even though he purported to adopt the assessment. Dkt. No. 18 at 3-4. Dr.
26 Harrison is a Washington State Department of Human Services professional who was asked to

REPORT AND RECOMMENDATION
PAGE – 8

01  evaluate and perform an RFC assessment regarding the plaintiff in March 2002.  AR 198-201.

02  She reported that the plaintiff's mental health examination supported a diagnosis of dysthymic

03  disorder, impulse control disorder, arithmetic disorder, and possible ADHD.  AR at 200.

04  However, she also opined that these limitations did not preclude her from performing non-

05  complex tasks, but that she should not work with the general public and, because she might

06  have difficulty working with co-workers and supervisors, she should be limited to working

07  with only a few co-workers.  AR at 201.

08     Contrary to the argument made by the plaintiff, the ALJ did, in fact, establish an RFC

09  consistent with Dr. Harrison's diagnosis.  He found that the plaintiff "was limited by

10  concentration difficulties to work involving simple instruction and activities, without close

11  frequent interaction with the general public, and would work best with .. . . few coworkers."

12  AR at 28.  This is also consistent with the opinion of Thomas Clifford, Ph.D., a state DDS

13  who performed a psychiatric review in October 2005.  AR at 291-308.  Dr. Clifford concluded

14  that the plaintiff suffered only mild restrictions in her activities of daily living, moderate

15  difficulty maintaining social functioning, and mild difficulty in maintaining concentration,

16  persistence or pace.  He also noted that she had no episodes of decompensation.  AR at 301.

17  He further concluded that the plaintiff could do simple tasks, but should avoid complex tasks

18  due to grief responses, and that she would do best in a low stress environment and a job that

19  avoided contact with the public.  AR at 307.

20     Substantial evidence as that term has been defined exists in the record to support the

21  ALJ's determinations regarding plaintiff's alleged mental impairments.  The ALJ did not err in

22  his evaluations of the plaintiff's mental impairments.

3.  *Plaintiff's Left Foot Drop, Left Knee Osteoarthritis, and Mathematics Disorder*[2]

As discussed above, the Commissioner concedes that the ALJ erred at step two by failing to include the plaintiff's left foot drop, left knee osteoarthritis and mathematics disorder as "severe." However, the Commissioner contends that the RFC the ALJ found for the plaintiff takes these limitations into account.

Finding 5 states, in part:

> . . . . I find that the claimant has the residual functional capacity to perform sedentary work. The claimant is able to lift and carry ten pounds frequently. With normal breaks, the claimant can stand or walk for a total of two hours in an eight-hour work day, and sit for about six hours in an eight-hour work day. The claimant can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs; but never climb ladders, ropes, or scaffolds. The claimant should avoid concentrated exposures to extreme cold, vibration, and environmental hazards such as machinery and heights. The claimant is capable of simple tasks, should avoid interaction with the general public, would work best with few co-workers, and can meet the basic adaptive needs of the work place.

AR at 24.

The plaintiff asserts that the ALJ failed to consider medical evidence in Dr. Trimingham's reports that stated that she could be on her feet for only a "minimum amount of time," and the opinion of Dr. Heilbrunn who, the plaintiff alleges, opined that the plaintiff was limited to a maximum of twenty minutes of standing at a time. Dkt. No. 15 at 10-12; Dkt. No. 18 at 6. In her reply brief, the plaintiff also claims that the ALJ incorrectly rejected the plaintiff's testimony about her physical limitations. Dkt. No. 18 at 7-9.

As a matter of law, more weight is given to a treating physician's opinion than to that of a nontreating physician because a treating physician "is employed to cure and has a greater

---

[2] As noted above, the ALJ's RFC assessment already accounted for the mathematics disorder that the Commissioner concedes should have been included as severe at step two. Because the limitations were accounted for in the RFC, any error at step two regarding mathematics disorder is deemed harmless. *See supra*, § VII.A.1. As a result, this section will focus solely on the physical impairment issues raised.

REPORT AND RECOMMENDATION
PAGE – 10

opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). "Likewise, greater weight is accorded to the opinion of an examining physician than a non-examining physician." *Andrews*, 53 F.3d at 1041; *see also* 20 C.F.R. § 416.927(d)(1).

A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

Dr. Trimingham was a treating physician for the plaintiff. After her surgery, Dr. Trimingham indicated several times that she could return to work, albeit sedentary work. In late November, 2001, after seeing the plaintiff for a post surgical visit, Dr. Trimingham wrote:

> Patient is now 10 months post-surgery. She has been doing reasonably well. The knee brace was quite helpful. She has misplaced that recently. Her major complaint now is of giving out of her ankle. This appears to be a lateral instability; probably related to the peroneal nerve injury rather than the OCD. Ankle moves smoothly and easily, no irritablity. Her primary problem, I think, is the foot drop and the ankle instability and the AFO would be the answer to this. She had one made several months after the surgery but is not wearing it. . . . We have again discussed her work status. I am giving her a January 1, 2002 date for return to work. This is going to have to be relatively sedentary, i.e. minimal amount of time on her feet.

AR at 318.

REPORT AND RECOMMENDATION
PAGE – 11

In February, 2002, Dr. Trimingham followed this up with another exam, concluding:

> No real treatment. I do not know what is wrong other than she banged her foot with the heater. She is obviously seeking a variety of things, including drugs and some way around returning to work. . . . We have given her work release in the past that she could begin starting in December and then January. She has not done anything yet. . . . As far as I am concerned, she should be back to work doing something by now and should progress through DVR. In the meantime, I have told her I would giver her 10 Vicodin. **This is the only prescription we will write** and essentially I did it to simply get her out of the office. Also Rx for ibuprofen. . . . I have essentially told her that there is no need to see her again in followup unless there is an entirely new issue that arises.

AR at 315.

In addition, Dr. Heilbrunn evaluated plaintiff in September 2005. AR 339-43. He concluded that the plaintiff "could be expected to sit for a cumulative length of time of 5-6 hours in an 8-hour work period, with periods for postural repositioning, with a limitation of lumbar radicular pain. . . . The claimant could be expected to stand or walk for at least 20 minutes uninterrupted, as manifest in the examination, and for a cumulative length of time of 3-4 hours in an 8-hour work period, with limitations correlating to left drop foot and left knee osteoarthritis." *Id*. at 343.

The ALJ essentially credited Drs. Trimingham's and Heilbrunn's opinions regarding the plaintiff's limitations, stating that they were consistent with an ability to perform sedentary work activity and were consistent with the recommendations of Robert Hoskins, a DDS physician who made an RFC assessment in October 2005. AR at 25, 24. Dr. Hoskins concluded that the plaintiff was limited to standing/walking for up to three to four hours in an hour workday, due to her left foot drop. AR at 283-90.

Plaintiff's claim that the ALJ ignored the sedentary restrictions of Drs. Trimingham and Heilbrunn are not borne out by the record. The ALJ's adoption of Dr. Hoskins' evaluation did not include the twenty minute limitation contained in Dr. Heilbrunn's report, but both physicians were evaluating, non-treating physicians. Dr. Trimingham's initial report contained a reference to a "minimal" amount of standing. His second report two months later did not.

The role of this Court is limited.  It is possible to construe the medical evidence in the fashion urged by the plaintiff.  However, it cannot be said that the interpretation urged by the plaintiff is the only rational interpretation of the medical evidence.  In such circumstances, it is the Commissioner's conclusion that must be upheld.  *Thomas*, 278 F.3d at 954.  The ALJ did not err in his evaluation of the medical evidence, his determination of the severe impairments, or his RFC analysis.

### B. The ALJ Did Not Err in His Adverse Credibility Determination.

Although not discussed in detail in either the plaintiff's opening brief or reply brief, the plaintiff claims the ALJ erred in his adverse credibility determination.  A determination of whether to accept a claimant's subjective symptom testimony requires a two step analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); SSR 96-7p (1996).[3]  First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms.  20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p.  Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick*, 157 F.3d at 722 (internal citations omitted).  Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general

---

[3] Social Security Rulings do not have the force of law.  Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are binding on SSA adjudicators. 20 C.F.R. § 402.35(b); *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001).  Accordingly, such rulings are given deference by the courts "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (internal citations omitted).

In this case, the ALJ found that the plaintiff's testimony about her limitations was not entirely credible. He cited the fact that the plaintiff was able to perform activities of daily living that would have otherwise been inconsistent with the degree of limitation urged by the plaintiff, including meal preparation, performance of household chores, grocery shopping, caring for pets and caring for an ailing husband. AR at 27, 238-44. This supports an adverse credibility determination. *Reddick*, 157 F.3d at 722. Similarly, the plaintiff's mother described her as not always truthful (AR at 105), her treating doctor opined that she should be working (AR at 24) and also believed that she was engaged in exaggerating her symptoms to obtain drugs. AR at 175. An examining physician's opinion that plaintiff's ability to work is not objectively limited undermines her credibility. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). Similarly, exaggeration of symptoms for secondary gains such as drug seeking behavior, undermines a plaintiff's credibility regarding the extent of her impairments. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). The ALJ did not err in making an adverse credibility determination.

C. <u>The ALJ Did Not Err by Using the Medical-Vocational Guidelines.</u>

When a claimant has established that she suffers from a severe impairment that prevents her from performing any past work, she has made a *prima facie* showing of disability. "At this point—step five—the burden shifts to the Commissioner to show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work

experience." *Tackett*, 180 F.3d at 1100 (citing 20 C.F.R. § 404.1560(b)(3)). Ordinarily, the Commissioner can meet this burden in one of two ways: (a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2 ("Guidelines").

The Guidelines are a matrix system used to determine whether substantial gainful work exists for claimants with substantially uniform levels of impairment. *Tackett*, 180 F.3d at 1101. The Guidelines categorize work by exertional level (sedentary, light, or medium) and contain various factors relevant to a claimant's ability to find work, including age, education, and work experience. When a claimant's qualifications correspond to job requirements, the Guidelines direct a conclusion of whether work exists that the claimant could perform, and if such work exists, the claimant is considered not disabled.

Because the Guidelines categorize jobs by their physical exertion requirement, their use is appropriate when it is established that a claimant suffers from exertional impairments. Conversely, when a plaintiff suffers from significant *non*-exertional impairments, resort to the Guidelines is generally inappropriate, and the ALJ may not mechanically apply them to direct a finding of disability or non-disability. *See Widmark v. Barnhart*, 454 F.3d 1063, 1069 (9th Cir. 2006) ("[T]he ALJ may rely on the Guidelines alone 'only when the [Guidelines] accurately and completely describe the claimant's abilities and limitations.'") (quoting *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985) (second alteration by *Widmark* court)). Instead, the ALJ must use the principles in the appropriate sections of the regulations to determine whether the claimant is disabled. *Tackett*, 180 F.3d at 1101-02; Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *1. Furthermore, when an ALJ uses the Guidelines as a framework to evaluate non-exertional limitations not contemplated and described by the Guidelines, he must call upon a VE. *Tackett*, 180 F.3d at 1102. In such a scenario, the ALJ must provide the VE with an accurate and detailed description of the claimant's impairments,

REPORT AND RECOMMENDATION
PAGE – 15

as reflected by the medical evidence of record. *Id.* at 1101.[4]

Here, the ALJ failed to call a VE at step five after finding plaintiff suffered from the severe non-exertional impairment of depression at step two. AR at 27-30. Instead, without the assistance of a VE, the ALJ concluded that plaintiff's "mental limitations do not unduly reduce her capacity to perform substantial gainful activity. . . . Specifically, I find that the claimant is limited by [her] concentration difficulties to work involving simple instructions and activities, without close frequent interaction with the general public and would work best with a few coworkers." AR at 28. The ALJ went on to hold that the plaintiff's limitations would "not have a significant effect on claimant's ability to perform unskilled work, which is the universe of work which is the subject of the Commissioner's Medical-Vocational Guidelines." AR at 28-29.

Resolution of this issue is governed by the Ninth Circuits recent opinion in *Hoopai v. Astrue*, 499 F.3d 1071 (9th Cir. 2007). In *Hoopai*, the plaintiff argued that because, like here, the ALJ found depression to be a severe impairment at step two, use of a VE was required. The court disagreed:

> At step five a vocational expert's testimony is required when a non-exertional limitation is "'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitation." The step two and step five determinations require different levels of severity of limitations such that the satisfaction of the requirements at step two does not automatically lead to the conclusion that the claimant has satisfied the requirements at step five.

*Id.* at 1076 (citation omitted).

The court proceeded to note that a VE is required "only when there are significant and

---

[4] The Commissioner may meet this step five burden by propounding to the VE a hypothetical question that, at the very least, adequately reflects all the claimant's impairments and limitations supported by substantial evidence in the record. *Magallanes*, 881 F.2d at 756-57. Using the VE, the ALJ must determine whether plaintiff is capable of her past relevant work, and if not, whether her relevant work skills are transferable to other jobs. If such skills are not transferable, the ALJ must then determine whether the plaintiff is capable of performing any unskilled work. SSR 85-15.

REPORT AND RECOMMENDATION
PAGE – 16

'sufficiently severe' non-exertional limitations" not accounted for in the Guidelines. *Id.* To this end, the ALJ is to evaluate the plaintiff's non-exertional limitations, and determine if they are not accounted for in the Guidelines. Here, this was what the ALJ did. The ALJ did not err by using the Guidelines.

## VIII. CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision this case be AFFIRMED, and this matter DISMISSED with prejudice. A proposed order accompanies this Report and Recommendation.

DATED this 14th day of December, 2007.

/s/ James P. Donohue
JAMES P. DONOHUE
United States Magistrate Judge